Index No.: 13 CV 1018 (KBF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IMANI BROWN,

                                                                    Plaintiff,

                              -against-

THE CITY OF NEW YORK, a municipal entity; and
New York City Police Officers JUSTIN NAIMOLI
(shield #26063) and THEODORE PLEVRITIS, in their
individual capacities,

                                                                    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**

*ZACHARY CARTER*
*Corporation Counsel of the City of New York*

*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Andrew Lucas*
*Tel:  (212) 356-2373*
*NYCLIS #:  2013-007646*

# TABLE OF CONTENTS

TABLE OF CONTENTS....................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

PROCEDURAL HISTORY.................................................................................................2

STATEMENT OF FACTS ..................................................................................................2

STANDARD OF REVIEW ................................................................................................ 5

ARGUMENT ..................................................................................................................... 5

PROBABLE   CAUSE   EXISTED   FOR   THE   ARREST   AND
IMPRISONMENT   OF   PLAINTIFF,   AND   THE   OFFICERS   ARE
PROTECTED BY QUALIFIED IMMUNITY.....................................................................5

PLAINTIFF'S   CLAIM   FOR   EXCESSIVE   FORCE   FAILS   AS   A
MATTER OF LAW AND UNDER THE FACTS PRESENTED..................................................14

PLAINTIFF'S   CLAIM   FOR   INHUMANE   CONDITIONS   OF
CONFINEMENT MUST BE DISMISSED......................................................................17

PLAINTIFF'S FIRST AMENDMENT CLAIMS FAIL AS A MATTER
OF LAW. ........................................................................................................................19

    **A.   Probable Cause and Qualified Immunity Provide a Complete Defense to
Plaintiff's First Amendment Claim.**................................................................. 20
    **B.   Plaintiff Was Not Engaged in Expressive Activity at the Location or Time of
her Arrest.**.......................................................................................................... 20
    **C.   No Evidence Indicates First Amendment Expression Had Any Relation to the
Decision to Arrest Plaintiff.**............................................................................ 21

PLAINTIFF'S STATE CLAIMS FAIL AS A MATTER OF LAW............................................21

    **A.   Plaintiff's claims under the State Constitution Must be Dismissed as Subsumed
under Common Law Claims, and without Merit.**.......................................... 21
    **B.   Plaintiff's Assault and Battery Claims Must be Dismissed as Untimely and
without Merit.**.................................................................................................... 23
    **C.   Plaintiffs Negligence, and Emotional Distress claims Must be Dismissed.**........ 24

CONCLUSION................................................................................................................. 26

## TABLE OF AUTHORITIES

**Cases**

Adams v. Williams, 407 U.S. 143 (S. Ct. 1972) ........................................................... 7, 11

Bender v. City of New York, 78 F.3d 787 (2d Cir. 1996) ................................................ 25

Berger v. Schmitt, 91 F. App'x 189 (2d Cir. 2004) ......................................................... 10

Bernard v. United States, 25 F.3d 98 (2d Cir. 1994) ................................................. 6, 24

Bradway v. Gonzales, 26 F.3d 313 (2d Cir. 1994) .......................................................... 11

Brock v. Wright, 315 F.3d 158 (2d Cir. 2003) ................................................................ 18

Brown v State of New York 89 NY2d 172, 192 (1996) .................................................. 22

C.G. v. City of New York, 2013 U.S. Dist. LEXIS 153020 (E.D.N.Y. 2013) ................ 10

Caiozzo v. Koreman, 581 F.3d 63, 70 (2d Cir. 2009) ..................................................... 18

Caldarola v. Calabrese, 298 F.3 156 (2d Cir. 2002) ........................................................ 7

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ......................................................... 5, 13

Chimel v. California, 395 U.S. 752 (1969) ...................................................................... 12

Covington v. City of New York, 171 F.3d 117 (2d Cir. 1999) .......................................... 6

Crowell v. Kirkpatrick, 400 Fed. Appx. 592 (2d Cir. 2010) ........................................... 16

Devenpeck v. Alford, 543 U.S. 146 (2004) ....................................................................... 6

Dunaway v. New York, 442 U.S. 200 (S. Ct. 1979) .......................................................... 6

Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451 (1992) ............................ 5

Estate of Yankel Rosenbaum v. City of New York,
    982 F. Supp. 894 (E.D.N.Y. 1997) .................................................................. 22, 24

Fabrikant v. French, 691 F.3d 193 (2d Cir. 2012) ........................................................ 20

Farmer v. Brennan, 511 U.S. 825 (1994) ....................................................................... 18

Faruki v. City of New York, 2012 U.S. Dist. Lexis 47310 (S.D.N.Y. 2012 ..................... 16

Florence v. Board of Chosen Freeholders of County of Burlington, 132 S.Ct 1510 (2012) ........ 13

Florida v. JL., 529 U.S. 266 (S. Ct. 2000) ....................................................................... 7

Gaston v. Coughlin, 249 F.3d 156 (2d Cir. 2001) ......................................................... 18

Gonzalez v. City of New York, 38 Fed. Appx. 62 (2d Cir. 2002) ................................... 13

Graham v. Connor, 490 U.S. 386 (1989) ........................................................................ 14

Hansel v. Sheridan, 991 F. Supp. 69 (N.D.N.Y. 1998)..................................................... 25

Highway Tavern Corp. v. McLaughlin, 105 A.D.2d 122 (N.Y. 1984)........................... 23

Hunter v. Bryant, 502 U.S. 224 (1991) ......................................................................... 12

Hyde v. Caputo, 2001 U.S. Dist. Lexis 6253 (E.D.N.Y. 2001) ...................................... 5

Illinois v. Gates, 462 U.S. 213 (1983) ........................................................................... 7

Jabbar v. Fischer, 683 F.3d 54 (2d Cir. 2012) ............................................................. 18

Jaegly v. Couch, 439 F.3d 149 (2d Cir. 2006) ...................................................... 6, 8, 12

Jason v. Krey, 60 A.D.3d 735 (N.Y. 2009) .................................................................... 25

Johnson v. Glick, 481 F.2d 1028 (2d Cir. 1973) ........................................................... 14

Johnson-Schmitt v. Robinson, 2013 U.S. Dist. Lexis 181427 (W.D.N.Y. 2013)......... 18

Johnston v. Port Auth. of N.Y. & N.J.,

    2011 U.S. Dist. LEXIS 82815 (E.D.N.Y. 2011) ....................................................... 24

Kerman v. City of New York, 261 F.3d 229 (2d Cir. 2001)........................................... 16

Kia P. v. Mcintyre, 235 F.3d 749 (2d Cir. 2000)........................................................... 13

Kuck v. Danaher, 600 F.3d 159 (2d Cir. 2010) ...................................................... 20, 21

LaTrieste Rest. & Cabaret v. Vill. of Port Chester, 40 F.3d 587 (2d Cir. 1994) ......... 13

Lyles v. State, 2 A.D.3d 694 (2nd Dept. 2003) ............................................................. 22

Malley v. Briggs, 475 U.S. 335 (1986)......................................................................... 12

Marcavage v. City of New York, 689 F.3d 98 (2d Cir. 2012)........................................ 6

Martinez v. City of Schenectady, 97 N.Y.2d 78 (N.Y. 2001) ...................................... 22

Martinez v. Simonetti, 202 F.3d 625 (2d Cir. 2000)...................................................... 6

Miloslavsky v. AES Eng'g Soc'y, Inc.,

    808 F. Supp. 351 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993)................ 6

Moore v. City of New York, 219 F. Supp. 2d 335 (E.D.N.Y. 2002)............................. 25

O'Neill v. Town of Babylon, 986 F.2d 646 (2d Cir. 1993) ........................................... 6

Odom v. Keane, 1997 U.S. Dist. LEXIS 14077 (S.D.N.Y. 1997)................................. 19

Overall v. Estate of Klotz, 52 F.3d 398 (2d Cir. 1995)................................................. 24

Panetta v. Crowley, 460 F.3d 388 (2d Cir. 2006) ........................................................ 7

Phelps v. Kapnolas, 308 F.3d 180 (2d Cir. 2002)......................................................... 18

Reed v. Powers, 2002 U.S. Dist. LEXIS 16499 (S.D.N.Y. 2002)................................. 24

Rhodes v. Chapman, 452 U.S. 337 (1981) ................................................................... 18

Rincon v. City of New York, 2005 U.S. Dist. LEXIS 4335 (S.D.N.Y. 2005) ...................... 14, 15

Romero v. City of New York, 839 F. Supp. 2d 588 (E.D.N.Y. 2012) ......................................... 25

Santulli v. Russelo, 2013 U.S. App. LEXIS 5285 (2d Cir. 2013) ................................................ 20

Simpson v. City of New York, 2013 U.S. Dist. LEXIS 173472 (S.D.N.Y. 2013)..................... 24

Simpson v. Uniondale Union Free Sch. Dist., 702 F. Supp. 2d 122 (E.D.N.Y. 2010 ................ 25

Singer v. Fulton County, 63 F.3d 110 (2d Cir. 1995).................................................................... 6

Southerland v. City of New York, 667 F.3d 87 (2d Cir. N.Y. 2011) .......................................... 13

Tracy v. Freshwater, 623 F.3d. 90 (2d Cir. 2010) ...................................................................... 17

Treat v. Cent. N.Y. Psychiatric Ctr., 2013 U.S. Dist. LEXIS 164780 (N.D.N.Y 2013)............... 19

United States v. Tehrani, 49 F.3d 54  (2d Cir. Vt. 1995)............................................................. 11

United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999)............................................................. 14

Walker v. Schult, 717 F.3d 119 (2d Cir. 2013)........................................................................... 18

Ying Jing Gan v. City of New York, 996 F.3d 522 (2d Cir. 1993) ............................................... 5

Wende v. United Methodist Church, 4 N.Y. 3d 293 (N.Y. 2005) ............................................... 24

Zellner v. Summerlin, 494 F.3d 344 (2d Cir. 2007) ................................................................. 6, 12

**Statutes**

42 U.S.C. § 1983.............................................................................................................................. 1

Fed. R. Civ. P. 12(c) ....................................................................................................................... 1

Fed. R. Civ. P. 56........................................................................................................................ 1, 5

N.Y. CVP Law § 215.................................................................................................................... 23

N.Y. Pen. Law § 195.05......................................................................................................... 10, 11

N.Y. Pen. Law § 240.20................................................................................................................. 9

N.Y. Pen. Law § 240.26(3)............................................................................................................ 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x

IMANI BROWN,

                                                  Plaintiff,

                    -against-

THE CITY OF NEW YORK, a municipal entity; and New York
City Police Officers JUSTIN NAIMOLI (shield #26063) and
THEODORE PLEVRITIS, in their individual capacities,

                                                  Defendants.

-------------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT**

**13 CV 1018 (KBF)**

       Defendants City of New York, Justin Naimoli and Theodore Plevritis by their attorney Zachary Carter, Corporation Counsel of the City of New York, hereby submit this Memorandum of Law in support of their Motion to Dismiss pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**PRELIMINARY STATEMENT**

       Plaintiff brings this action pursuant to 42 U.S.C. § 1983 against defendants alleging that she was subjected to a violation of her First, Fourth, and Fourteenth Amendment rights, as well as the New York State Constitution and common laws claims of assault, infliction of emotional distress, and negligence..

       Defendants are entitled to summary judgment on these claims as probable cause and qualified immunity exist for plaintiffs arrest and any search was privileged.  Plaintiff was not engaged in any expressive speech at the time of her arrest, First Amendment expression has no relation to her arrest, and assuming *aguendo* that it did, plaintiff's claim still fails as probable cause and qualified immunity make her arrest privileged.  Plaintiff's conditions of confinement claim fails as she has not suffered any violative treatment.  Plaintiff's excessive force claim fails

as the force used to subdue her was at all times objectively reasonable, and demonstrably the minimum force necessary to effect her arrest.  Plaintiff's Fourteenth Amendment claims are subsumed by her allegations of specific conduct and without merit.  Plaintiff's common law and State Constitution claims are fail procedurally, as pled, and per the facts presented.

## PROCEDURAL HISTORY

Plaintiff filed the instant complaint on or about February 13, 2013 against the City of New York and Officer Naimoli.  Plaintiff filed an Amended Complaint against the City of New York, Officer Naimoli and Officer Pleviritis on or about July 9, 2013.  All defendants answered on August 28, 2013.  On February 7, 2014 discovery was closed.

## STATEMENT OF FACTS

On December 15, 2011, plaintiff was out with friends when she heard that protestors in Zuccotti Park were being removed from the premises.  56.1 ¶¶ 1-2.  Plaintiff went to Zuccotti Park to witness the events and arrived at approximately 2:00 a.m.  56.1 ¶¶ 4-6.  At approximately 5:00 a.m. plaintiff left the area around Zuccotti Park with a friend, Johnny Sagan.  56.1 ¶ 8.  Plaintiff approached a Starbucks and knocked on the door with an elevated voice to get the attention of the Starbucks employees inside.  56.1 ¶¶ 11, 14.  At the scene Sagan describes plaintiff as "banging on the door asking them to use their discretion and let her go to the bathroom, and they called the police on her."  56.1 ¶ 71.  The Starbucks was closed, and after bringing the employees to the door two times, plaintiff decided to wait for the store to open.  56.1 ¶¶ 10-16.  At least one other individual in addition to plaintiff and Sagan arrived in front of the Starbucks and waited with plaintiff at that point. 56.1 ¶¶ 17-18, 48.

At 5:05, the assistant manager of the Starbucks, Ismael Torres, called 911 for a group of people knocking on the door of the Starbucks, behaving aggressively and making 'nasty' comments.  56.1 ¶¶ 20-22, 24-25.  Torres was concerned the door may be forced open, he

did not think he could open the store, and was also concerned for the safety of his employees. 56.1 ¶¶ 21-22, 24-26.  Other than herself, plaintiff is not aware of anyone else who knocked on the door of the Starbucks prior to the 911 call.  56.1 ¶ 19.

The dispatcher relaying the 911 call informed Officers Naimoli and Plevritis that there was a group of six people in front of the Starbucks banging on the door and refusing to leave.  56.1 ¶ 29.  Officers Naimoli and Plevritis arrived at the Starbucks at approximately 5:10. 56.1 ¶¶ 30, 34.  As they arrived Officers Plevritis and Naimoli requested the dispatcher call Torres back for additional information.  56.1 ¶ 31.  Officers Naimoli and Plevritis then got out of their car and approached the Starbucks to talk to Torres.  56.1 ¶¶ 36, 38.  Torres informed the officers that plaintiff banging on the door, as well as the other individuals in front of the store, had made him fearful and concerned for the store property.  56.1 ¶¶ 38-40.  Officers Naimoli and Plevritis ordered the group to disperse and proceeded to get back in their car.  56.1 ¶ 42.   After two attempts, the police dispatcher did reach Torres for the callback that the Officers requested when they arrived.  56.1 ¶ 32.  At 5:12 Torres informed the dispatcher that he had just spoken to the police.  56.1 ¶¶ 32-33.

Plaintiff approached Officer Naimoli and Plevritis in their car and asked where she could use a bathroom.  56.1 ¶ 45.  The officers did not direct her to a bathroom and eventually directed plaintiff to leave the area.  56.1 ¶¶ 45-46.  Plaintiff decided to wait for the Starbucks to open rather than leave the area.  56.1 ¶ 47.  At least two other people were waiting in front of the Starbucks at that point.  56.1 ¶ 48.  The officers exited the car, informed plaintiff that Starbucks had called them, and asked for her identification, which she refused to provide. 56.1 ¶¶ 49-51.  Officers then told plaintiff to go home, and she replied that she could not.  56.1 ¶ 52.  Officers told plaintiff that she would have received a citation but now was going to be

placed under arrest. 56.1 ¶ 53. One of the officers grabbed her arm. 56.1 ¶ 54. Plaintiff responded by refusing to allow the officers to hold her arms and asking why she was being arrested. 56.1 ¶ 55.

Plaintiff was asked to stop resisting the officers at least four times, and warned that she would be put on the ground at least twice before officers took her to the ground. 56.1 ¶ 56. After being taken to the ground plaintiff continued to resist, in part because she wanted to keep ahold of her phone and wallet and reach for her purse. 56.1 ¶ 62. After taking her to the ground Officers told Plaintiff to stop resisting fourteen times, to "stop it" five times and to give over her hands. 56.1 ¶¶ 64-66. After these warnings plaintiff was told to give her hands or she would be pepper sprayed. 56.1 ¶¶ 67-68. Plaintiff was then pepper sprayed a first time. 56.1 ¶ 69. Plaintiff continued to resist and was again warned multiple times to stop resisting and place her hands behind her back. 56.1 ¶ 72. She continued to resist. 56.1 ¶ 73. Plaintiff was again warned that she would be pepper sprayed, and when she continued to resist, was pepper sprayed. 56.1 ¶¶ 74-76.

After being pepper sprayed a second time plaintiff was again ordered multiple times to put her hands behind her back and to stop resisting. 56.1 ¶ 77. Plaintiff continued to resist for approximately twenty seconds after being pepper sprayed a second time. 56.1 ¶ 78. Plaintiff finally offered her arms to be handcuffed, in part because she did not want to be pepper sprayed again. 56.1 ¶ 78.

Plaintiff was transported to the 1st Precinct. 56.1 ¶ 84. Officer Naimoli called for emergency medical care within five minutes of plaintiff being transported from the scene. 56.1 ¶¶ 82-83. Plaintiff never asked for medical treatment and refused it when it arrived. 56.1 ¶¶ 85-86. Plaintiff still needed to use a bathroom and was told she could use one when they were done

booking her.  56.1 ¶ 87.  Plaintiff was permitted to use a bathroom within 20 minutes of arriving at the 1st Precinct.  56.1 ¶ 87.  Plaintiff was arraigned on two charges of disorderly conduct and resisting arrest.  56.1 ¶ 88.  She accepted an adjournment in contemplation of dismissal at her second Court appearance.  56.1 ¶ 89.

### STANDARD OF REVIEW

Under Rule 56(c), summary judgment is warranted when, viewing the evidence in the light most favorable to the non-movant, the Court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56; Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 457 (1992).   A motion for summary judgment requires the party with the burden of proof at trial to "make a showing sufficient to establish the existence of [each] element essential to that party's case…since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

To establish the existence of each element of their claim, the non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible."  Ying Jing Gan v. City of New York, 996 F.3d 522, 532 (2d Cir. 1993).

### ARGUMENT

### PROBABLE CAUSE EXISTED FOR THE ARREST AND IMPRISONMENT OF PLAINTIFF, AND THE OFFICERS ARE PROTECTED BY QUALIFIED IMMUNITY.

The existence of probable cause to arrest constitutes justification and is a complete defense to a claim of false arrest and imprisonment.  Hyde v. Caputo, 2001 U.S. Dist.

Lexis 6253, * (E.D.N.Y. 2001); *citing* Covington v. City of New York, 171 F.3d 117, 112 (2d Cir. 1999). "There can be no federal civil rights claim for false arrest where the arresting officer had probable cause. Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer v. Fulton County, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotations omitted); *citing* Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir. 1993).

Where there is probable cause to arrest for any offense a false arrest claim is subject to dismissal.  Marcavage v. City of New York, 689 F.3d 98, 110 (2d Cir. 2012); *citing* Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006); *see also* Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004); Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007)

"Probable cause exists where the facts and circumstances within the officer's knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been, or is being committed by the person to be arrested."  Dunaway v. New York, 442 U.S. 200, 208 (S. Ct. 1979).

"[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness."  Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000); *citing* Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993) ("The veracity of citizen complaints who are the victims of the very crime they report to the police is assumed").

Where a complainant victim is relied upon "The reliability or veracity of the informant and the basis for the informant's knowledge are two important factors, [A] tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated is especially significant in establishing probable cause." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006); *citing*; Florida v. JL., 529 U.S. 266, 270, (S. Ct. 2000); Caldarola v. Calabrese, 298 F.3 156, 162 (2d Cir. 2002); Additionally, "if an unquestionably honest citizen comes forward with a report of criminal activity -- which if fabricated would subject him to criminal liability -- . . . rigorous scrutiny of the basis of his knowledge [is] unnecessary." Caldarola v. Calabrese, 298 F.3d 163 (2d Cir. 2002); *citing* Illinois v. Gates, 462 U.S. 213, 233 (1983); Adams v. Williams, 407 U.S. 143, (S. Ct. 1972).  At the root "[w]e have endorsed the position that an identified citizen informant is presumed to be reliable." Panetta, 460 F.3d 395; *citing*; Caldarola, 298 F.3d 165.

In this case plaintiff admits that she was knocking on the door to the Starbucks calling to the employees with an elevated voice, bringing them from their work to the front of the store twice.  56.1 ¶¶ 11-15.  Plaintiff's friend described her at the scene as "banging on the door."  56.1 ¶ 48.  This led Torres, the assistant manager, to become alarmed and to call 911. 56.1 ¶ 20.  Torres described their actions to the 911 operator as knocking on the door really really bad trying to get in, and making nasty comments.  56.1 ¶ 21.  Torres did not think he could open the store with these individuals out front, described them as aggressive and angry, expressed concerned for the safety of any employees who would arrive with plaintiff out front, and was concerned they would force the locked doors opened.  56.1 ¶¶ 21-26.

When they arrived, Officer Naimoli and Officer Plevritis had been told that a group of people was banging on the doors refusing to leave.  56.1 ¶ 29.  They passed by the

- 7 -

individuals in front of the Starbucks and approached Torres.  56.1 ¶¶ 37-38.  Torres was fearful for safety and property, pointed out plaintiff and the rest of the group he was concerned about. 56.1 ¶¶ 38-40.  Officers asked the individuals to disperse and got back in their car.  56.1 ¶ 42.

Based on the information known to the officers probable cause existed to arrest plaintiff under several provisions of law.  "Under New York law, [a] person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person… he or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such    other    person    and    which    serve    no    legitimate    purpose." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. N.Y. 2006); *quoting* N.Y. Pen. Law § 240.26(3). Plaintiff knocked on the door to a closed place of business with an elevated voice bringing the employees to the front multiple times, and ultimately driving them to call 911 for what they described as aggressive and angry behavior that they were concerned endangered incoming employees and property.  Officer Plevritis and Naimoli knew prior to arrival that there was a group in front Starbucks banging on the doors refusing to leave.  This information, coupled with plaintiff's admission that it was her alone banging on the doors, and her conversation with the officers where explained that she was looking for a bathroom and was going to wait at the Starbucks  provides clear probable cause.

In Jaegly, *supra*, the Court found probable cause for harassment where an individual photographed a parked truck.  Here plaintiff banged on the door of the Starbucks so vigorously that after being pulled away from work twice, the employees were concernted enough that they called 911.  They describe the actions of the group, including plaintiff, as aggressive and their demeanor as angry leaving Torres in fear for any arriving employees safety. Regardless of whether plaintiff needed to use a bathroom, trying to gain access to a closed

business in a way that keeps people from doing their job, has them fear for safety and property, and drives them to call 911 for help is a violation of 240.26(3).  As such, based on this charge alone probable cause existed, and plaintiff's arrest was proper.

Probable cause also existed to arrest plaintiff for disorderly conduct.  "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: . . . He engages in fighting or in violent, tumultuous or threatening behavior; He makes unreasonable noise; In a public place, he uses abusive or obscene language, or makes an obscene gesture; or He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse…"  N.Y. Penal Law § 240.20(1-3)(6).

As they approached the scene the Officers knew that 911 had been called because of banging on the door of the Starbucks.  After speaking with Torres, the Officers were able to specifically identify plaintiff.  Prior to being arrested plaintiff was ordered to leave the area at least once.  56.1 ¶¶ 42-43, 46-47, 52.  Plaintiff declined to leave the area.  56.1 ¶¶ 42-43, 47.  Plaintiff told the officers point blank that she would not go home.  56.1 ¶ 52.  At that point, plaintiff had behaved in a tumultuous or threatening manner sufficient to provoke a call to 911 and had been identified, as she admits, knocking or banging on the door.  56.1 ¶¶ 19-26.  She also was part of a group that Torres stated was making abusive and loud comments, characterized as yelling, cursing, and making 'nasty comments.'  56.1 ¶¶ 21, 24, 41.  This behavior also had Torres in fear that the door would be forced open.  56.1 ¶ 26. Finally, with at least two other individuals present, it is undisputed that plaintiff declined to leave the area after being asked to go home and ordered to disperse.  56.1 ¶¶ 42-43, 46-47, 52.

Based on the information available and what occurred at the scene probable cause to arrest plaintiff for disorderly conduct existed. She disobeyed the Officer's request to leave, and based upon the information supplied over the radio and by Torres was in derogation of subsections 1-3 as well.

Additionally, plaintiff engaged in obstruction of governmental administration, "A person is guilty of this offense if he prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference... Refusing to obey orders to leave the premises can be the basis for an arrest for obstructing governmental administration." C.G. v. City of New York, 2013 U.S. Dist. LEXIS 153020, *21 (E.D.N.Y. 2013)(considering refusal to leave or to provide identification); *citing* N.Y. Penal Law § 195.05; Berger v. Schmitt, 91 F. App'x 189, 191 (2d Cir. 2004).

After plaintiff was asked to disperse and chose to remain at the Starbucks officers told plaintiff that Starbucks had called them, and asked her for her license. 56.1 ¶¶ 46, 50, 51-52. She declined to provide it. 56.1 ¶ 51. Officers told plaintiff to disperse or go home, and when she declined, she was placed under arrest. 56.1 ¶¶ 42-43, 46-47, 52-54.

Plaintiff knew that the officers had been called to the location by Starbucks, presumably Starbucks employees, and could infer that it was her interaction with the employees that led to the call as she was the only one she saw knocking or banging on the door. Rather than provide identification on request plaintiff refused. As probable cause existed to arrest plaintiff on various other charges at that point the request for identification is proper, but even if the officers merely sought to investigate the 911 call, they were still entitled to ask for plaintiff's identification. When she refused to provide it she was interfering with their duties and was in violation of § 195.05.

"It is well established that the Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response . . . . A brief stop of a suspicious individual, in order to determine his *identity* or to maintain the status quo momentarily while obtaining more information." United States v. Tehrani, 49 F.3d 54, 60 (2d Cir. Vt. 1995)(emphasis added); *citing* Adams v. Williams, 407 U.S. 143, 145-46 (1972).

Officers were called to the scene by a 911 call for a group banging on the door of a Starbucks.  Plaintiff was in front of the closed Starbucks with a group early in the morning, and even if only to investigate and gather more information, the officers had a right to request her identification.  The officers were correct in thinking that the group waiting outside was the same one that had provoked the 911 call, and after conferring with Torres that inference was confirmed.  The officers here even took the added step of informing plaintiff about the 911 call.  However, plaintiff ultimately decided to refuse to provide identification, though she had it on her, and also refused to leave the scene, either action placed her in violation of N.Y. Pen. Law § 195.05.

Even if the Court finds there was not probable cause, the defendants are entitled to qualified immunity in this case.  The "doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known . . . or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights."  Bradway v. Gonzales, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations and quotations omitted).

A police officer is entitled to qualified immunity from a claim for arrest without probable cause if: (1) it was objectively reasonable for the officer to believe that probable cause existed; or (2) officers of reasonable competence could disagree on whether there was probable

cause.  Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007) (citations omitted).  "An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances."  Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995).

The Supreme Court has noted "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

As the officers had probable cause they violated no clearly established rights of plaintiff's.  Furthermore even if probable cause did not exist the officers acted reasonablly under the circumstances in believing probable cause existed.  Plaintiff's elevated voice and banging on the door of Starbucks scared the employees into calling 911.  The officers arrived to find plaintiff in front of the Starbucks and conferred with Torres.  Following that, plaintiff concedes that she was told to leave and declined to do so, and then was asked for her identification and declined to provide it.

Finally, defendants Fourth Amendment claim for an unlawful search fails.  "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape.   Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated."  Chimel v. California, 395 U.S. 752, 762-63 (1969).  Plaintiff only states one search took place, at Central Booking, by a female officer.  See Exhibit F, 66: 2-9.  As none of the named defendants are implicated in this search this claim must be dismissed, however, as plaintiff's arrest was justified by probable cause, and separately justified prior to introducing her

to the detainee population at Central Booking, any search is non-actionable and summary judgment must be granted.  See Florence v. Board of Chosen Freeholders of County of Burlington, 132 S.Ct 1510 (2012).

Plaintiff separately brings claims under the 14th Amendment.  Summary judgment should be granted with respect to her 14th Amendment claims as well.  "Where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process."  Southerland v. City of New York, 667 F.3d 87, 103 (2d Cir. N.Y. 2011); *quoting* Kia P. v. Mcintyre, 235 F.3d 749, 757 (2d Cir. 2000).  Any claim under the equal protection clause fails as plaintiff cannot point to any admissible evidence that identifies her as treated differently from other individuals who were banging on the door of a Starbucks until frightened employees called 911, and then refused orders to disperse or to provide identification. Gonzalez v. City of New York, 38 Fed. Appx. 62, 64 (2d Cir. 2002); LaTrieste Rest. & Cabaret v. Vill. of Port Chester, 40 F.3d 587, 590 (2d Cir. 1994); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Probable cause existed to arrest plaintiff based upon the information known to the officers at the time they arrived at the location, after they conferred with Torres, and based upon plaintiff's refusal to disperse or provide identification.  Furthermore, the actions of the officers at the scene are subject to qualified immunity, and were categorically reasonable.  Any search of plaintiff was lawful, privileged, and regardless not alleged against any individual defendants. Plaintiff's claims under the equal protection and due process clause fail as subsumed other under causes of action, and unsupported by the record.

**PLAINTIFF'S   CLAIM   FOR   EXCESSIVE
FORCE FAILS AS A MATTER OF LAW AND
UNDER THE FACTS PRESENTED.**

An "excessive force claim arises in the context of an arrest or investigatory stop
of a free citizen, it is most properly characterized as one invoking the protections of the Fourth
Amendment ..." Graham v. Connor, 490 U.S. 386, 394 (1989).  The Courts have consistently
held "that the right to make an arrest or investigatory stop necessarily carries with it the right to
use some degree of physical coercion or threat thereof . . . ." Graham, 490 U.S. at 396 (citations
omitted).   Thus, "[d]etermining whether the force used to effect a particular seizure is
'reasonable'… requires a careful balancing of 'the nature and quality of the intrusion on the
individual's Fourth Amendment interests against the countervailing governmental interests at
stake." Graham, 490 U.S. at 396 (citations omitted) .

A plaintiff must establish "through evidence, that the 'alleged use of force is
objectively sufficiently serious or harmful enough to be actionable.'" Rincon v. City of New
York, 2005 U.S. Dist. LEXIS 4335, *11 (S.D.N.Y. 2005); citing United States v. Walsh, 194
F.3d 37, 50 (2d Cir. 1999)).  "Not every push or shove, even if it may later seem unnecessary in
the peace of a judge's chambers, violates the Fourth Amendment." Graham v. Connor, 490 U.S.
397; citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

In affecting plaintiff's arrest officers took plaintiff to the ground and used pepper
spray twice for less than a second each time.  56.1 ¶¶ 57, 63, 69, 76.  These actions, as shown on
video and as described by the parties were objectively reasonable in the circumstances and
plaintiff's claim for excessive force must be dismissed.

Plaintiff concedes that she was told that she was being placed under arrest, but
chose instead to resist and keep her arms away from the officers.  56.1 ¶¶ 53, 55.  Prior to
bringing plaintiff to the ground the officers asked her to stop moving her arms, and to stop

resisting at least three times.  56.1 ¶ 56.  Officers had communicated that plaintiff would be brought to the ground, as her friend Sagan can be heard saying "please don't put her on the floor, please just let her go."  56.1 ¶ 56.  Officers again warned plaintiff that she would be brought to the floor prior to the officers bringing her down stating "Alright, you're going to the ground now."  56.1 ¶ 56.  Plaintiff continued to resist, and it took both officers to bring her to the ground.  56.1 ¶ 57.  That plaintiff was taken to the ground by two officers is not dispositive.  Rincon v. City of New York, 2005 U.S. Dist. LEXIS 4335, *16 (S.D.N.Y. 2005) (Dismissing excessive force where two officers threw plaintiff to the ground causing injury to wrist and leg.). Here the officers provided at least two warnings that she would be taken to the ground and requested plaintiff offer her hands and stop resisting at least four times over at least twenty seconds.

Subsequently, after taking plaintiff to the ground the officers continued to try and get plaintiff's hands and she continued to resist.  56.1 ¶¶ 61-62.  Before resorting to pepper spray the officers ordered plaintiff to stop resisting at least fourteen more times over approximately a minute and twenty seconds.  56.1 ¶ 64.   Before resorting to pepper spray the officers ordered plaintiff to give over her hands once and to "stop it" five times over the same minute and twenty seconds.  56.1 ¶¶ 65-66.  Finally, the officers warned plaintiff to surrender her hands or she would be pepper sprayed.  56.1 ¶ 67.  After resisting the officers attempts to handcuff her for nearly two minutes, when plaintiff did not give over her hands she was pepper sprayed for less than one second.  56.1 ¶ 69.  The use of pepper spray was reasonable in this circumstance, and in fact the least dangerous and forceful option available to the officers in dealing with plaintiff physically struggling against being arrested.  Crowell v. Kirkpatrick, 400 Fed. Appx. 592 (2d

Cir. 2010)(Qualified immunity available to officers who used tasers against non-violent, passively resisting trespassers).

After being pepper sprayed the first time, officers continued to order plaintiff to stop resisting and to give them her hands.  56.1 ¶ 72.  She continued to resist.  56.1 ¶ 73.  After over two minutes of struggling with plaintiff while she continued to resist, Officer Plevritis again warned plaintiff that she would be pepper sprayed.  56.1 ¶ 74-75.  After being pepper sprayed a second time, the officers continued to order her to put her hands behind her back and stop resisting.  56.1 ¶ 77.  Approximately twenty seconds after she was pepper sprayed the second time the officers finally succeeded in handcuffing plaintiff.  56.1 ¶ 78.  Plaintiff explained that part of the reason she stopped resisting was because she did not want to be pepper sprayed again.  56.1 ¶ 78.  She resisted the attempts to handcuff her for over two and half minutes.  In that time neither officer punched plaintiff.  56.1 ¶ 79.  Neither officer kicked plaintiff, except for when they took her to the ground.  56.1 ¶ 80.  Plaintiff did not request any medical treatment, and when EMS was called she refused any assistance.  56.1 ¶¶ 85-86.

"The right to make an arrest carries with it the right to use some degree of physical coercion as long as the force used is reasonable based on the perception of the arresting officer at the time of arrest.  Faruki v. City of New York, 2012 U.S. Dist. Lexis 47310, *17 (S.D.N.Y. 2012); citing Kerman v. City of New York, 261 F.3d 229, 239 (2d Cir. 2001).  In this case the officers were attempting to affect an arrest, and plaintiff concedes she was actively resisting.  Dozens of orders to stop resisting and surrender her hands were given and ignored.  Officers warned plaintiff that she would be brought to the ground if she did not comply.  Officers warned plaintiff that she would be pepper sprayed if she did not comply.  Each action was

preceded by numerous requests that went unheeded by plaintiff, continued physical struggle and was still preceded by warnings before any escalation.

Further demonstrating the reasonableness of the force used, neither officer threw any punches or kicks, and plaintiff ultimately refused medical treatment at the police precinct, at Central Booking, and ultimately waited until November 18, 2011, two days after her release, to seek any treatment.  The Second Circuit has been clear that minimal injuries also speak to the reasonableness of force used.  Tracy v. Freshwater, 623 F.3d. 90, 97 (2d Cir. 2010)(Striking multiple times with a metal flashlight in the course of a hand-to-hand struggle is subject to qualified immunity, even where plaintiff claims he was not resisting).  Here, plaintiff, fought with two officers for over two minutes and sustained no injury that required treatment that night, and nothing that she sought treatment for until three days later.

Finally, and most importantly, plaintiff concedes that it was only the use of pepper spray, and the risk of it being used again, that caused her to stop resisting arrest.  The officers here gave plaintiff every opportunity to submit to arrest peacefully.  Every caution was taken and warning given before any escalation, and she concedes that she only stopped resisting because of the pepper spray.  As such it is clear that the officers acted both reasonably and cautiously in effecting an arrest of a vigorously resisting subject, and to the extent the same is in doubt, the officers are entitled to qualified immunity as it was reasonable under the circumstances for the officers to use the force shown in Defendants Exhibit L and M.

## PLAINTIFF'S CLAIM FOR INHUMANE CONDITIONS OF CONFINEMENT MUST BE DISMISSED.

Plaintiff brings conditions of confinement claim which are premised on four separate claims:  failure to provide a bathroom for 20 minutes; failure to provide water at central

booking; failure to provide food prior to Central Booking; and failure to provide soap on request

prior to getting a sandwich at Central Booking.

"Although a pre-trial detainee's challenge to the conditions of her confinement is

properly reviewed under the due process clause of the Fourteenth Amendment, the standard for

evaluating deliberate indifference to the health or safety of a person in custody is the same

irrespective of whether the claim is brought under the Eighth or Fourteenth Amendment."

Johnson-Schmitt v. Robinson, 2013 U.S. Dist. LEXIS 181427 (W.D.N.Y. 2013); *citing* Caiozzo

v. Koreman, 581 F.3d 63, 70, 72 (2d Cir. 2009).

> To state an Eighth Amendment claim  based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with "a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety."
> To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health... Thus, prison officials violate the Constitution when they deprive an inmate of his "basic human needs" such as food, clothing, medical care, and safe and sanitary living conditions… [T]here is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency.
> To meet the subjective element, the plaintiff must show that the defendant acted with  more than mere negligence. To constitute deliberate indifference, [t]he prison official must know of, and disregard, an excessive risk to inmate health or safety. Evidence that a risk was obvious or otherwise must have been known to a defendant may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk.  Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks omitted); *Quoting* Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001); Farmer v. Brennan, 511 U.S. 825, 834-5 (1994);Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002) (per curiam); Jabbar v. Fischer, 683 F.3d 54, 57 (2d Cir. 2012); Brock v. Wright, 315 F.3d 158, 164 (2d Cir. 2003);

Defendants submit that waiting 20 minutes to use a bathroom does not rise to the

level of a conditions of confinement claim as a matter of law.  "Individuals in custody do not

have a constitutional right to use the bathroom or to shower whenever they please."  Treat v.

<u>Cent. N.Y. Psychiatric Ctr.</u>, 2013 U.S. Dist. LEXIS 164780, *7-8 (N.D.N.Y 2013) (Holding forty minute waits for the bathroom and one shower per week does not amount to a constitutional violation); *citing* <u>Odom v. Keane</u>, 1997 U.S. Dist. LEXIS 14077, *4-5 (S.D.N.Y. 1997) (explaining that the plaintiff's claim that he was denied access to the bathroom for ten hours was not sufficient to amount to a Constitutional violation).

      Additionally, plaintiff's claims related to water, a sandwich and soap, all fail under the 8th Amendment standard above.  Plaintiff asked for water at Central Booking and was informed that no cups were available, but was provided with a milk carton that was subsequently filled with water for her.  <u>See</u> Exhibit F, 66-67.  Additionally, plaintiff was provided with a sandwich prior to her arraignment at approximately midnight on November 16, 2011.  Finally, plaintiff's claim regarding hand soap fails as a matter of law, when merely one shower per week would not have amounted to a constitutional violation.

      Ultimately none of these claims satisfy the objective element as serious deprivations of basic human needs, and none satisfy the subjective test as posing an excessive risk to plaintiff's health or safety that was disregarded.  Plaintiff fails to claim facts that satisfy either prong and cannot do so now.

      Additionally, plaintiff's claims, save for the 20 minute wait to use the bathroom, occurred in Central Booking, and the conduct in question is not alleged to have been by any defendants.  Accordingly, even if these claims did amount to constitutional violations, they must be dismissed against the defendants in this action.

## PLAINTIFF'S FIRST AMENDMENT CLAIMS <br> <u>FAIL AS A MATTER OF LAW.</u>

      In order to state a claim for First Amendment Retaliation, plaintiff must establish "1) [s]he has an interest protected by the First Amendment; 2) defendants' actions were

motivated or substantially caused by his exercise of that right; and 3) defendants' actions effectively chilled the exercise of his First Amendment right." Kuck v. Danaher, 600 F.3d 159, 168, (2d Cir. 2010); Santulli v. Russelo, 2013 U.S. App. LEXIS 5285, *3-4 (2d Cir. 2013).

Plaintiff's First Amendment Retaliation claim fails as probable cause existed for her arrest; qualified immunity shields the actions of the officer; she was not engaged in any expressive activity at the time or location of her arrest; and there is no basis to argue her connection with any expressive activity was related to her arrest.

### A. Probable Cause and Qualified Immunity Provide a Complete Defense to Plaintiff's First Amendment Claim.

Probable cause is a complete defense to a claim of First Amendment Retaliation. "Fabrikant's claims of malicious prosecution, unreasonable search and seizure, and First Amendment retaliation fail because defendants had probable cause…" Fabrikant v. French, 691 F.3d 193, 215-216 (2d Cir. 2012).

Here, as outlined above probable cause and qualified immunity render plaintiff's arrest proper, and insulate defendants from any liability. As such, there can be no liability for alleged First Amendment retaliation.

### B. Plaintiff Was Not Engaged in Expressive Activity at the Location or Time of her Arrest.

Plaintiff's First Amendment claim also fails if she did not have an interest protected by the First Amendment. Kuck v. Danaher, 600 F.3d 168. Here plaintiff had no First Amendment interest, was engaged in no expressive activity, and cannot satisfy the second prong of the test. The events leading to her arrest happened when she and a friend went find a bathroom. 56.1 ¶ 8. The speech plaintiff was engaged in consisted of finding out when a Starbucks opened so she could use their facilities.

In claiming that she had a First Amendment right at this location, plaintiff is attempting to drape the Occupy Wall Street movement as a protective pall over things she does anywhere, unrelated to Occupy. Plaintiff had no message at the time of her arrest but the practical message of seeking a restroom. Whatever activity she is involved in at other times, in other locations does not protect her when banging on a Starbucks door until they call 911. As such her First Amendment claim must be dismissed.

### C. No Evidence Indicates First Amendment Expression Had Any Relation to the Decision to Arrest Plaintiff.

Finally, the second prong of the First Amendment retaliation test further fails as No evidence implicates First Amendment expression as motivating defendants' actions. Kuck v. Danaher, 600 F.3d 168. Plaintiff's arrest arose from her actions against Starbucks employees, not because of any protected speech activities. Critically, the officers had no reason to believe she was a member of Occupy, and it did not factor into their decision to arrest. 56.1 ¶ 81. Plaintiff was arrested for criminal acts while she sought a bathroom.

As probable cause existed for her arrest, as plaintiff was not engaged in expressive activities at the time of her arrest, as the officers had no reason to know of any unrelated past First Amendment activities, and as there is no evidence indicating her arrest was the result of prior First Amendment activity, plaintiff's First Amendment Retaliation claim fails and must be dismissed.

### PLAINTIFF'S STATE CLAIMS FAIL AS A MATTER OF LAW.

### A. Plaintiff's claims under the State Constitution Must be Dismissed as Subsumed under Common Law Claims, and without Merit.

Plaintiff's claims under the State Constitution should be subsumed under the common law claims available, or dismissed as without merit. "Claimants must establish grounds

that entitle them to a damages remedy, in addition to proving that their constitutional rights have been violated.  Recognition of a constitutional tort claim here is neither necessary to effectuate the purposes of the State constitutional protections plaintiff invokes, nor appropriate to ensure full realization of her rights." Martinez v. City of Schenectady, 97 N.Y.2d 78, 83 (N.Y. 2001)(Declining to extend narrow remedy of State Constitutional claims found in Brown v State of New York 89 NY2d 172, 192 (1996)).

"[T]he recognition of the claimant's state constitutional claims was neither necessary nor appropriate to ensure the full realization of his rights, because the alleged wrongs could have been redressed by an alternative remedy, namely, timely interposed common-law tort claims for assault and battery, false imprisonment, and the intentional and negligent injury to his property[.]" Lyles v. State, 2 A.D.3d 694, 695 (2nd Dept. 2003).  Here plaintiff brings State Constitutional claims under Article 1, §§ 1, 6, 8 and 12.

Plaintiff's claims under Article 1, § 12 are analogous to false arrest and imprisonment claims.  As discussed, probable cause existed for the arrest of plaintiff. Additionally, to the extent officers are granted qualified immunity for the federal claims, with respect to the state law claims the officers are entitled to even greater immunity.  At common law, a governmental employee is immune from suit if he was exercising the discretion and judgment inherent to his or her job.  Estate of Yankel Rosenbaum v. City of New York, 982 F. Supp. 894, 895 (E.D.N.Y. 1997).  Here, decisions and actions regarding an arrest are inherent to the nature of being a police officer and immunity must attach.

Similarly, Article 1, § 1 provides "No member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land…"  As plaintiff's arrest was proper, there was no deprivation outside the law of the land, and

regardless, this claim should also be subsumed under a common-law false arrest claim as discussed above.

Plaintiff's claims under Article 1, § 8 are analogous to the First Amendment claims considered above.  Highway Tavern Corp. v. McLaughlin, 105 A.D.2d 122, 125 (N.Y. 1984).  Expressive speech by an arrestee does not make an otherwise proper arrest unlawful, but even if it did, plaintiff was not engaged in expressive speech, and the officers were not motivated by and did not know about any past or future protected activities she might engage in.

Article 1, § 6 speaks to several rights and it is ultimately unclear what right plaintiff alleges a violation of.  Accordingly this claim should be dismissed as vague and improperly pled.  Defendants reserve the right to supplement this argument to the extent plaintiff points to any applicable portion.

Accordingly, plaintiff's State Constitutional claims should be subsumed as common-law claims and dismissed on the merits.

### B.  Plaintiff's Assault and Battery Claims Must be Dismissed as Untimely and without Merit.

Plaintiff filed this claim on or about February 13, 2013.  Plaintiff alleges assault and battery claims that accrued on the morning of November 15, 2011.  Plaintiff's assault and battery claims must be dismissed as untimely and without merit.

N.Y. CVP. Law § 215 states: "The following actions shall be commenced within one year:  (3) an action to recover damages for assault, battery, false imprisonment, malicious prosecution, libel, slander, false words causing special damages, or a violation of the right of privacy under section fifty-one of the civil rights law."

Plaintiff failed to commence this action within one year, and accordingly her claims for assault and battery must be dismissed.  Wende v. United Methodist Church, 4 N.Y. 3d

- 23 -

293, 298 (N.Y. 2005); <u>Reed v. Powers</u>, 2002 U.S. Dist. LEXIS 16499, *8-9 (S.D.N.Y. 2002);

<u>Overall v. Estate of Klotz</u>, 52 F.3d 398 (2d Cir. 1995)

   With respect to plaintiff's claims for assault and battery, "[o]fficers executing a lawful arrest are privileged to commit any battery that is reasonably necessary to effect the arrest." <u>Johnston v. Port Auth. of N.Y. & N.J.</u>, 2011 U.S. Dist. LEXIS 82815, at *36 (E.D.N.Y. July 28, 2011) (granting summary judgment to defendants against plaintiff's claim of assault). As discussed above the officers did use force, but only after dozens of orders were ignored, and warnings given.  Even then plaintiff resisted for at least two and half minutes until she considered getting pepper sprayed a third time.

   Further as discussed above, to the extent officers are granted qualified immunity for the federal claims, with respect to the state law claims the officers are immune from suit if they were exercising the discretion and judgment inherent to his or her job.  <u>Estate of Yankel Rosenbaum</u>, 982 F. Supp. 895.  That immunity attaches to judgment made trying to subdue a resisting subject, and a claim for assault and battery cannot lie.

### C. Plaintiffs Negligence, and Emotional Distress claims Must be Dismissed.

   "[U]nder New York law plaintiffs can't recover under general negligence [principles] for a claim that a law enforcement officer failed to exercise the appropriate degree of care in effecting an arrest." <u>Simpson v. City of New York</u>, 2013 U.S. Dist. LEXIS 173472, *8 (S.D.N.Y. 2013); *citing* <u>Bernard v. United States</u>, 25 F.3d 98, 103 (2d Cir. 1994) .  Plaintiff's claim for general negligence must be dismissed as she only pleads such a violation of a duty of care in the course of her arrest.

   In New York, "'no intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability.'"   <u>Moore v.</u>

City of New York, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) (granting defendants summary judgment and dismissing plaintiff's claim of IIED as being encompassed by plaintiff's claims for assault, battery, and malicious prosecution); *quoting* Hansel v. Sheridan, 991 F. Supp. 69, 75 (N.D.N.Y. 1998).

A claim for negligent infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) a causal connection between the conduct and the injury; and (3) severe emotional distress.  Simpson v. Uniondale Union Free Sch. Dist., 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010).  The "New York Court of Appeals has strongly cautioned against allowing emotional distress claims to be brought where other tort remedies are available."  Romero v. City of New York, 839 F. Supp. 2d 588, 632 (E.D.N.Y. 2012) (citing Moore v. City of New York, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002).

Plaintiff's claim negligent infliction of emotional distress fail because the officers actions are not actionable as negligence.  Additionally plaintiff's claim for intentional infliction of emotional distress fails as there is no evidence that the alleged actions were undertaken to intentionally cause plaintiff emotional distress. "A claim based on intentional infliction of emotional distress also requires that the defendant intend to cause severe emotional distress." Simpson v. Uniondale Union Free Sch. Dist., 702 F. Supp. 2d 122, 134-135 (E.D.N.Y. 2010) ; *citing* Bender v. City of New York, 78 F.3d 787, 789 (2d Cir. 1996).  Further all of these claims should be dismissed as other tort remedies are more appropriate.  "[I]t is well settled that the circumstances under which recovery may be had for purely emotional harm are extremely limited…"  Simpson v. Uniondale, 702 F. Supp. 2d 122, 135 (E.D.N.Y. 2010) ; *quoting* Jason v. Krey, 60 A.D.3d 735, 736 (N.Y. 2009).  The alleged conduct of the defendants was undertaken

in effecting plaintiff's arrest and are properly framed as common law claims.  Both negligence claims, and the intentional infliction of emotional distress claims must be dismissed.

## CONCLUSION

For the foregoing reasons defendants respectfully request that the Court grant summary judgment on both causes of action and dismiss plaintiffs' complaint with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            February 13, 2014

                        ZACHARY CARTER
                        Corporation Counsel - City of New York
                        *Attorney for Defendants*
                        100 Church Street
                        New York, New York 10007
                        (212) 356-2373

                        By:    /s/ _____
                               Andrew Lucas
                               New York City Law Department
                               Special Federal Litigation Division