Index No.: 13 CV 1018 (KBF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IMANI BROWN,

                                    Plaintiff,

                     -against-

THE CITY OF NEW YORK, a municipal entity; and New York City Police Officers JUSTIN NAIMOLI (shield #26063) and THEODORE PLEVRITIS, in their individual capacities,

                                    Defendants.

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*ZACHARY CARTER*
*Corporation Counsel of the City of New York*

    *Attorney for Defendants*
    *100 Church Street*
    *New York, N.Y.  10007*


    *Of Counsel:  Andrew Lucas*
    *Tel:  (212) 356-2373*
    *NYCLIS #:  2013-007646*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    PROBABLE CAUSE EXISTED FOR THE ARREST OF PLAINTIFF, AND THE OFFICERS ARE PROTECTED BY QUALIFIED IMMUNITY ................................................................................ 2

    PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM MUST BE DISMISSED AND HER SELF-SERVING AFFIDAVIT DISREGARDED ............................................................................. 7

    PLAINTIFF'S CLAIM FOR EXCESSIVE FORCE MUST BE DISMISSED ...................................................................................................... 10

CONCLUSION .................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

Atwater v. City of Lago Vista, 532 U.S. 318 (U.S. 2001) ............................................................ 10

Colombo v. O'Connell, 310 F.3d 115 (2d Cir. 2002) ..................................................................... 9

Crenshaw v. City of Mount Vernon, 372 F. Appx 202 (2d Cir. 2010) ........................................... 5

Curley v. Village of Suffern, 268 F.3d 65 (2d Cir. 2001 ................................................................ 8

Faruki v. City of New York, 2012 U.S. Dist. Lexis 47310 (S.D.N.Y. 2012) ................................. 9

Hunter v. Bryant, 502 U.S. 224 (1991) .......................................................................................... 7

Lennon v. Miller, 66 F.3d 416 (2d Cir. 1995) ................................................................................ 6

Linehan v. State, 201 A.D.2d 706 (2d Dep't 1994) ....................................................................... 6

People v. Baker, 20 N.Y.3d 356 (2013) ......................................................................................... 4

People v. Howard, 50 N.Y.2d 583 (N.Y. 1980) ............................................................................ 6

People v. Offen, 96 Misc. 2d 147 (N.Y. Crim Ct. 1978) ............................................................... 6

United States v. Nelson, 500 Fed. Appx. 90 (2d Cir. 2012) .......................................................... 4

Williams v. Town of Greenburgh, 535 F.3d 71 (2d Cir. 2008) .................................................. 8, 9

**Statutes**

Fed. R. Civ. P. 56 ............................................................................................................................ 1

N.Y. Pen. Law § 195.05 .............................................................................................................. 5, 6

N.Y. Pen. Law § 240.20(3) ............................................................................................................ 4

N.Y. Pen. Law § 240.20(6) ............................................................................................................ 4

N.Y. Pen. Law § 240.26(3) ............................................................................................................ 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x

IMANI BROWN,

                                              Plaintiff,

-against-

THE CITY OF NEW YORK, a municipal entity; and New York
City Police Officers JUSTIN NAIMOLI (shield #26063) and
THEODORE PLEVRITIS, in their individual capacities,

                                              Defendants.

------------------------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**13 CV 1018 (KBF)**

        Defendants City of New York, Justin Naimoli and Theodore Plevritis by their attorney Zachary Carter, Corporation Counsel of the City of New York, hereby submit this Reply Memorandum of Law in support of their Motion to Dismiss pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

        Plaintiff does not oppose defendants motion for summary judgment with respect to her Fourth Amendment search claim, her 14th Amendment equal protection claim, or her 14th Amendment conditions of confinement claim.  Plaintiff opposes with respect to her Fourth Amendment false arrest and excessive force claim, her First Amendment retaliation claim, and her state claims only.

        Defendants offer this reply arguing that probable cause and qualified immunity preclude plaintiff's false arrest claim.  Plaintiff's First Amendment retaliation claim fails as a matter of law, and her excessive force claim is without merit based on the facts presented.[1]

---

[1] Defendants reserve their reply on plaintiff's state law claims for oral argument should the Court deem it necessary.

## ARGUMENT

### PROBABLE CAUSE EXISTED FOR THE ARREST OF PLAINTIFF, AND THE OFFICERS ARE PROTECTED BY QUALIFIED IMMUNITY

Probable cause existed for plaintiffs arrest and the officers are entitled to qualified immunity, regardless of when, or even whether the officers spoke to the Starbucks manager, Torres, before her arrest.[2]

Plaintiff does not dispute that Torres called 911 from the Starbucks. 56.1 ¶ 20. Plaintiff does not dispute that Defendants knew Starbucks had called the police due to "six people banging on the doors refusing to leave a Starbucks coffee." 56.1 ¶ 29. Plaintiff does not dispute that she was present in front of the Starbucks when the police arrived. 56.1 ¶ 43. And Plaintiff attempts to muddle the record in her 56.1 statement, but it is clear that she was told to leave several times, and refused to leave or provide identification.

Decl. Exhibit B, p. 32, ¶¶ 12-19

Q: Was there any further discussion between you and the police officers?
A: Yes. I responded that, you know, something around – paraphrasing, okay, so you're really not going to help me. They told me if I can – they told me to go home.

Decl. Exhibit B, pp 34-35

Q: What, if anything did the officers do?
A: Asked for my ID.
Q: Did you have ID?
A: Yes.
Q: Did you give it to them?

---

[2] Notwithstanding, by the undisputed facts set forth in Defendants 56.1 ¶ 33 and ¶ 70, the audio attached as Exhibit K; the documentary evidence as Exhibit O, the video attached as Exhibit M, as well as the transcripts of Defendants Plevritis, Naimoli and non-party Torres, the record in this case shows that the Defendants spoke with Torres prior to Plaintiff's arrest. Viewing the evidence in the light most favorable to Plaintiff does not mean disregarding facts and the incontrovertible record to assume plaintiff was aware of all persons movements prior to her approaching the Defendants. McKinney v. Dzurenda, 2014 U.S. App. LEXIS 3340 (2d Cir. 2014) ("However, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

> A:  I did not.
> Q:  What did you say?
> A:  I asked why, on what grounds.  That I wasn't doing anything.
> Q:  What did they do after you said, on what grounds?
> A:  They told me that I should go home.
> Q:  Did there come a point where they told you they were going to place you under arrest?
> A:  Yes.
> Q:  When did they first say that?
> A:  I responded that I couldn't.  I was going to wait…
>
> Decl. Exhibit F, p 43, ¶¶ 8-13, 17-22.
>
> Q:  What happened next?
> A:  I said something like, really, so you are just not going to help me, you don't have anything you can offer me, any advice you can offer me?
> Q:  What did they say to that?
> A:  They told me that I should go home.
> Q:  Were both officers still in the car at that point?
> A:  Yes.
> Q:  What did you say in response?
> A:  I said that I lived over an hour away and that the Starbucks would be open and I would just wait.

Records turned over by the plaintiff pursuant to the Court's January 24, 2014, order were produced on or about March 3, 2014, after the filing of the underlying motion papers. In these records plaintiff further concedes that she refused to leave the sidewalk and resisted.

> Defendants Supplemental Declaration("Supp. Decl."), Exhibit 1, Bates 8831
>
> Redacted:  imanii you aiight??
> Plaintiff:  yeah
> Plaintiff:  I was maced and shit tho
> Redacted:  woahh
> Redacted:  u just refused to move?
> Plaintiff:  yes it's a long story
> Plaintiff:  I resisted arrest

Plaintiff was present in front of the Starbucks with at least two other people.  56.1 ¶¶ 18, 48.  The defendant officers arrived pursuant to a 911 call from Starbucks, complaining about a group banging on the door and refusing to leave.  Plaintiff was told to leave, and refused.  Subsequently she was placed under arrest.

- 3 -

Plaintiff attempts to rely upon People v. Baker, 20 N.Y.3d 356, 359-60 (2013) for the proposition that some threshold of a public dispute had not been met. This misrepresents both Baker and the law in the Second Circuit. The quote plaintiff relies upon turns on an analysis of N.Y. Pen. Law § 240.20(3) only. That provision deals with use of abusive or obscene language in a public place and because of that, it is specific to public disputes [3]. That is not a broad standard as plaintiff attempts to use it and is certainly not the standard with regards to an arrest for failure to obey a lawful order to disperse, N.Y. Pen. Law § 240.20(6).

In United States v. Nelson, 500 Fed. Appx. 90 (2d Cir. 2012), the Second Circuit considered a challenge to an arrest for N.Y. Pen. Law § 240.20(6) on the basis that there was not a sufficient number of other people for the statute to apply, and that the order to disperse was not lawful. The Court held that where there are at least two others present when an order is given, even if the other two had already obeyed the order to disperse at the time of arrest, there are a sufficient number of people for N.Y. Pen. Law § 240.20(6) to apply. Nelson, 500 Fed. Appx. 92-93.

The Court in Nelson also relied upon the District Court's determination of what renders an order lawful. "[A]n order to disperse is lawful unless the order was purely arbitrary and not calculated in any way to promote the public order." 500 Fed. Appx. 93 (quoting Crenshaw v. City of Mount Vernon, 372 F. Appx 202, 206 (2d Cir. 2010)). In responding to a 911 call for people banging on the Starbucks and refusing to leave, ordering plaintiff to leave was certainly lawful. When plaintiff did not leave she was subject to arrest under N.Y. Pen. Law § 240.20(6)

---

[3] Notably probable cause did exist for the arrest of plaintiff under 240.20(3). Not only did plaintiff's interactions with the Starbucks employees included an 'elevated' voice and lead to a 911 call, but, while plaintiff testified she did not recall using any profanity with the employees or officers, she concedes in Supp. Decl. Exhibit 3, Bates 8942 that she was "sure" she used profanity "hundreds" of times during the incident.

Furthermore, regardless of when the officers spoke with Torres, plaintiff was subject to arrest for harassment, N.Y. Pen. Law § 240.26(3) defendants had already been informed about a group refusing to leave Starbucks and banging on the door. 56.1 ¶ 29. On arriving the officers saw plaintiff in front of the Starbucks with two others and she refused to leave. 56.1 ¶¶ 43, 46, 48, 52. As she testified she was the only one who knocked on the door, and as Torres testified explicitly, that 911 call was for plaintiff. 56.1 ¶¶ 19, 40. After speaking with the officers plaintiff identified herself as looking for a bathroom, refusing to leave, and waiting for the Starbucks to open. 56.1 ¶¶ 45-47, 49-52. As it was a 911 call for people refusing to leave and banging on a door that brought officers there was probable cause to believe that plaintiff was among those who had "repeatedly commit[ed] acts which alarm[ed] or seriously annoy[ed] [the 911 caller] and which serve[d] no legitimate purpose." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. N.Y. 2006) (quotations omitted).

Finally, plaintiff argues there was no probable cause for obstruction of governmental administration, N.Y. Pen. Law § 195.05, by looking at her conduct as a series of disjointed activities. Plaintiff separately considers plaintiffs failure to leave, failure to provide ID, and does not even consider the 911 call that brought the officers to the scene, however what is clear is that overall, probable cause existed to arrest under § 195.05.

With respect to plaintiff's failure to leave, as considered above, the order to leave was lawful, and an official function under § 195.05. As plaintiff conceded in two sworn depositions and her personal correspondence she was told to leave and refused. That failure alone provides probable cause under N.Y. Pen. Law § 195.05. Lennon v. Miller, 66 F.3d 416, 424-25 (2d Cir. 1995); Linehan v. State, 201 A.D.2d 706, 706 (2d Dep't 1994).

Notwithstanding plaintiff also refused to provide identification. Plaintiff relies first upon a 1978 Criminal Court decision in People v. Offen for the proposition that ignoring a request for identification is not a crime and does not "supply any such element." 96 Misc. 2d 147, 150 (N.Y. Crim. Ct. 1978). Tellingly, plaintiff omits the very next sentence which reads "Though it is clear that such conduct risks pursuit and arrest, no crime has been charged here." Id. Failure to provide identification does not "supply any such element." Because the § 195.05 charge in Offen was only for fleeing the scene, not for refusing to provide identification. That is why Offen's failure to produce identification was not criminal, it was simply never charged or alleged that he failed to produce identification.

Similarly, plaintiff turns to People v. Howard, 50 N.Y.2d 583 (N.Y. 1980), for the proposition that she had a right to refuse identification. However, the criminal defendant in Howard had a right not to produce identification because "the officers had no information that a crime had occurred or was about to take place, had not seen defendant do anything criminal, and were confronted only by facts susceptible of innocent interpretation." Id. at 590. Conversely here the officers were responding to a 911 call regarding individuals in front of a Starbucks who were refusing to leave and banging on the door. Plaintiff was one of three people in front of a Starbucks and prompted the 911 call by what she calls knocking, but Torres and Sagan described at the time as knocking "really really bad" and "banging" respectively. Decl. Exhibit J, Exhibit M. After speaking with her the defendants knew that plaintiff was refusing to leave. As she not only acted like the people described in the 911 radio run, but was in fact the person who prompted the 911 call, plaintiff did not have a right to remain at the Starbucks or to refuse to provide identification. Accordingly, probable cause existed for her arrest under N.Y. Pen. Law § 195.05.

There are no material issues of fact in this case which preclude a finding of probable cause. The officers had information about a group refusing to leave and banging on the door. 56.1 ¶ 29. Plaintiff was identified to the officers by Torres prior to her arrest. 56.1 ¶¶ 33, 70. Plaintiff was ordered to leave, she declined to do so. She was asked her for her identification, she refused. Even to the extent probable cause does not exist, "[t]he qualified immunity standard gives ample room for mistaken judgments by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quotations omitted). In this case, responding to a 911 call about a group banging on the door and refusing to leave, coming upon someone who prompted that call and refused to leave or give identification and placing her under arrest when she refuses to disperse, the officers are entitled to qualified immunity.

### PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM MUST BE DISMISSED AND HER SELF-SERVING AFFIDAVIT DISREGARDED

At the outset, plaintiff does not contest that if her false arrest claim is dismissed no First Amendment retaliation claim can lie. Fabrikant v. French, 691 F.3d 193, 215-216 (2d Cir. 2012). To the extent the Court finds probable cause for any charges or qualified immunity for the officers, plaintiff's First Amendment retaliation claim fails. Plaintiff argues first that she had a protected right to provocative language towards the officers, second she speculates that the officers assumed her connection to Occupy Wall Street and falsely arrested her, and finally, offers a self-serving affidavit that contradicts her testimony, her own statements, and must be disregarded as a matter of law.

Plaintiff's first argument misapprehends a First Amendment retaliation claim. She speculates that her criticizing the officers actions led to her arrest. However, it is not enough

that she had some interaction with the officers that was unpleasant to maintain a retaliation claim.  Instead "[s]pecific proof of improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim."  Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001)(citations omitted).  Put differently, criticism may be protected speech, but needs to actually be what led to her arrest.  Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. 2008).  Plaintiff cannot provide any specific proof of improper motivation and her First Amendment retaliation claim fails.

Plaintiff next speculates that her arrest was due to a perceived affiliation with Occupy Wall Street protestors, though no evidence supports this allegation, she was not engaged in any expressive activity, and was just searching for a restroom. In essence, plaintiff urges the Court to provide that all persons in lower Manhattan on the morning of November 15, 2011 were engaged in protected First Amendment activity because they could have been involved in Occupy Wall Street.  Plaintiff must argue for such vague 'temporal proximity' as her First Amendment conduct because "Regardless of the factual context, we have required a plaintiff alleging retaliation to establish speech protected by the First Amendment." Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. N.Y. 2008).  Plaintiff may have left Zuccotti Park just 13 minutes prior, and perhaps if she had been followed from the park by the police this would be relevant, but as plaintiff concedes, the Officers were called to plaintiff's location because of a 911 call.

Finally, plaintiff offers a self serving affidavit which contradicts her testimony and documents in an attempt to buttress her retaliation claim.  At her deposition, plaintiff testified that she had been involved in "scores" of Occupy Wall Street events over years of involvement.  Decl Exhibit F, p. 23, ¶¶ 1-6.  She also estimated that prior to her arrest she

participated in only five demonstrations, and some other marches.  <u>Decl</u>. Exhibit F, p. 20, ¶¶ 9-23.  Now plaintiff offers an affidavit, for the first time claiming that s a result of this incident she avoided many demonstrations, including the events of November 17, 2011.  At the outset, plaintiff's affidavit is precisely the sort of contradictory self-serving document that must be disregarded as a matter of law.  "It is well settled that a party may not defeat summary judgment by submitting an affidavit that contradicts prior sworn testimony."  <u>Faruki v. City of New York</u>, 2012 U.S. Dist. Lexis 47310, at *13 (S.D.N.Y. 2012) (Citations omittied).  At the time of her deposition plaintiff was unable to even testify about when and how many demonstrations she took part in.  She described the whole two years she participated in Occupy events as a blur, and made no differentiation between the time before and after the arrest.  Accordingly the case law is clear that plaintiff's affidavit must be disregarded.

It is also clear that she offered this to try and provide any evidence of a chill on her First Amendment activities.  "To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights--in other words, there is an injury requirement to state the claim." <u>Williams v. Town of Greenburgh</u>, 535 F.3d 71, 78 (2d Cir. N.Y. 2008) (Citing <u>Colombo v. O'Connell</u>, 310 F.3d 115, 117 (2d Cir. 2002)).  Here plaintiff can show no chill to her first amendment rights.  Her affidavit offers one specific example, the events of November 17, 2011, the day after plaintiff was released from custody.  However, even if the Court considers her affidavit, plaintiff's own statements from November 17, 2011 contradict it affidavit, and show not a chill, or fear, but at best that she was tired from the previous night's arrest and struggle, but still enthusiastic to take part in Occupy events.  Supp. Decl. Exhibit 2, Bates 8851.

> Redacted:  are you going to keep protesting?
> Plaintiff:  of course

> Plaintiff: I just was going to lay low tonight
> Plaintiff: I was just released yesterday am
> Plaintiff: but now I'm regretting going home
> Plaintiff: I want to be out there!

Plaintiff's arrest has no connection to free speech, and plaintiff's being several blocks from Zuccotti Park or interacting with the police before her arrest does not make this a First Amendment issue. Additionally, plaintiff cannot prove any chill to her First Amendment rights, a fact highlighted by her affidavit, and contradicted by her prior testimony and her statements at the time.

### PLAINTIFF'S CLAIM FOR EXCESSIVE FORCE MUST BE DISMISSED

Plaintiff's excessive force claim must be dismissed as the uncontested testimony and incontrovertible evidence shows the force used was reasonable.

Plaintiff first attempts to claim that her offense was not even a crime. However, plaintiff's point fails as regardless of plaintiff's offense, it provides authority to arrest. Atwater v. City of Lago Vista, 532 U.S. 318, at 326 (U.S. 2001).

Subsequently Plaintiff characterizes the events during plaintiff's arrest, however here, there is no issue of fact, and characterization is unnecessary. The events have been documented and have been provided to the Court as part of the record. Decl. Exhibit M. Plaintiff notes the respective heights and weights of the plaintiff and officers, misrepresents the officers' performance evaluations, and even attempts to compare the pepper spray use here to a situation where a subject was handcuffed and not resisting. However, what is made plain by plaintiff's testimony, her gchats, and in particular the video, is that plaintiff resisted arrest for minutes. 56.1 ¶ 78; Decl. Exhibit F, p. 50, ¶¶ 11-21; Supp. Decl. Exhibit 1; Exhibit M. Through that time the officers did not punch or kicked her. The officers provided notice before bringing

her to the ground and using pepper spray, and ultimately, plaintiff only stopped fighting because of the pepper spray.  56.1 ¶ 78.

The force used was minimal and in response to plaintiff struggling against her arrest from the beginning until she finally allowed the officers to place her under arrest.  The events are clearly depicted and no issues of fact preclude a finding of summary judgment.  Accordingly, plaintiff's excessive force claim must be dismissed.

## CONCLUSION

For the foregoing reasons defendants respectfully request that the Court grant summary judgment on all causes of action and dismiss plaintiffs' complaint with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
May 2, 2014

ZACHARY CARTER
Corporation Counsel - City of New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-2373

By: /s/
Andrew Lucas
New York City Law Department
Special Federal Litigation Division