```
                                                    USDC SDNY
                                                    DOCUMENT
                                                    ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                        DOC #: _____
SOUTHERN DISTRICT OF NEW YORK                       DATE FILED: April 20, 2016
------------------------------------------------------------X
                                                      :
IMANI BROWN,                                          :
                                                      :
                            Plaintiff,                :     13-cv-1018 (KBF)
                                                      :
                    -v-                               :     OPINION & ORDER
                                                      :
CITY OF NEW YORK, et al.,                             :
                                                      :
                            Defendants.               :
                                                      :
------------------------------------------------------------X
```

KATHERINE B. FORREST, District Judge:

On February 13, 2013, plaintiff initiated this action against defendants, the City of New York and police officers Justin Naimoli and Theodore Plevritis, alleging several violations of plaintiff's constitutional rights in connection with her arrest in November 2011. The Court granted summary judgment on all counts to defendants on June 18, 2014. On August 19, 2015, the Second Circuit affirmed the decision of this court on the false arrest and First Amendment retaliation claims, but reversed on the excessive force claim. Neither the district court nor the Second Circuit addressed the question of whether defendants are entitled to qualified immunity with regards to the excessive force claim. After the Mandate of the Second Circuit issued on January 12, 2016, defendants filed a motion for summary judgment on the basis of qualified immunity as to the excessive force claim. For the reasons set forth below, defendants' motion is GRANTED.

I.  BACKGROUND

    A.  Factual Background

The Court assumes familiarity with the facts of this case and highlights only those facts pertinent to this motion. As the Second Circuit noted, the facts relating to the excessive force claim are largely undisputed.

On November 15, 2011, plaintiff attended an Occupy Wall Street demonstration in Manhattan with friends. At around 5:00 a.m., she approached a Starbucks near the demonstration. Plaintiff asked store employees whether she could use the bathroom inside. The employees told her the store would open at 5:30 a.m. Plaintiff decided to wait in front of the store. In the meantime, one of the employees called 911. Defendants, officers Naimoli and Plevritis ("the officers") arrived on scene minutes later. See Brown v. City of New York, 798 F.3d 94, 96 (2d Cir. 2015).

According to plaintiff, she then approached the officers and asked where she could use a bathroom. A conversation ensued, and the officers instructed plaintiff to go home. Plaintiff told officers she could not go home, and did not leave the area. The officers asked for plaintiff's identification, which she refused to provide. Officer Plevritis then grabbed plaintiff and told her that she would be put under arrest if she did not provide identification. When plaintiff again refused, the officers arrested her. Id.

The Second Circuit listed the following undisputed facts relevant to the arrest:

- Officers Plevritis and Naimoli were arresting Brown for disorderly conduct, a violation that; under New York law, is subject to a maximum punishment of 15 days in jail.

- Officer Plevritis was 5' 10" and weighed 215 pounds; Officer Naimoli was 5' 7" and weighed 150–160 pounds; Brown was 5' 6" and weighed 120 pounds.

- Officer Plevritis asked Brown to place her hands behind her back so that they could apply handcuffs, and she refused to do so.

- One of the officers kicked Brown's legs out from under her, causing her to fall to the ground.[1]

- One officer succeeded in placing handcuffs on Brown's right wrist.

- Both officers struggled with Brown, forcing her body to the ground.

- Officer Plevritis used his hand to push Brown's face onto the pavement.

- Brown's left arm, without a handcuff, was under her as she fell to the ground.

- The officers endeavored to take hold of Brown's left arm and bring it behind her to complete the handcuffing.

---

[1] During the time plaintiff was standing and refusing to comply with the officers' instructions, one of the officers stated, "Alright, you're going to the ground now" before bringing her to the ground. (See Defs.' Local R. 56.1 Stmt. of Undisputed Facts ¶ 56; Pl.'s Resp. to Def's Local R. 56.1 Stmt. of Undisputed Facts ¶ 56.)

3

- While on the ground, Brown did not offer her arms for handcuffing in part because she was trying to keep hold of her phone and wallet and reach for the scattered contents of her purse.[2]

- Officer Plevritis twice administered a burst of pepper spray directly to Brown's face.[3]

- The officers completed the handcuffing while Brown was still on the ground.

- Officer Naimoli was aware of techniques for applying handcuffs to a reluctant arrestee, other than taking a person to the ground.

Id., 798 F.3d at 101 (footnotes added).

There are also two relevant disputed facts, both of which this Court construes in plaintiff's favor for the purposes of this motion:

- According to Brown, the pepper spray was administered one foot away from her face. (Officer Plevritis claims the first dose was from two feet away and the second dose from three feet away.)

- According to Brown, she was trying to use her free arm to pull down her skirt, which was exposing her behind.

See id.

---

[2] Plaintiff was holding her handbag and cellphone the hand that was already handcuffed. (See Decl. of Joshua S. Moskovitz, Ex. M.)

[3] During the time that plaintiff was refusing to comply with the officers' instructions, and prior to each administration of pepper spray, the officer informed plaintiff that she would be sprayed. (See Defs.' Local R. 56.1 Stmt. of Undisputed Facts ¶¶ 67, 69, 72, 75; Pl.'s Resp. to Def's Local R. 56.1 Stmt. of Undisputed Facts ¶¶ 67, 69, 72, 75.)

In addition, it is also undisputed that the New York City Police Department Patrol Guide requires that pepper spray be used in "two (2) one second bursts, at a minimum distance of three (3) feet, and only in situations when the uniformed member of the service reasonably believes that it is necessary to . . . [e]ffect an arrest, or establish physical control of a subject resisting arrest." New York City Police Department Patrol Guide, Procedure No. 212–95 (Jan. 1, 2000).

Plaintiff was ultimately charged with resisting arrest under New York Penal Law § 205.30 and disorderly conduct in violation of New York Penal Law § 240.20(1) and (3). She eventually accepted an adjournment in contemplation of dismissal.

B.   Procedural History

Relevant to this motion is the trajectory of the qualified immunity defense in this action. Defendants pleaded qualified immunity generally in their Answer to the Amended Complaint, but not as to any particular claim. (ECF No. 6.) In their initial motion for summary judgment, defendants argued that the officers were entitled to qualified immunity on the false arrest, First Amendment retaliation, and the excessive force claims. (ECF No. 37.) Plaintiff's opposition discusses qualified immunity generally and argued that disputed issues of material fact foreclose the defense. (ECF No. 49.)

This Court's June 16, 2014 opinion granting summary judgment to defendants only discussed qualified immunity as to the false arrest and First Amendment claims, not the excessive force claim. The Second Circuit's review similarly specifically affirmed the Court's rule as to qualified immunity on the false arrest and First Amendment claim, but did not discuss it in the context of excessive

force.[4]  The Court has also reviewed the appellate briefing and oral argument in the Second Circuit appeal, and found no reference to qualified immunity with regard to the excessive force claim.  As discussed below, this Court also finds nothing in the Mandate from the Second Circuit foreclosing its ability to entertain a renewed motion on this issue at this time.

II.  LEGAL STANDARDS

   A.  Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial.  Id. at 322-23.

In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor."  Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).  Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial.  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "[A] party may not rely

---

[4]  Neither the majority nor the dissent discussed qualified immunity as to excessive force.

on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal citations omitted). In addition, "[o]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Porter v. Quarantillo, 722 F.3d 94, 97 (2d Cir. 2013) (internal quotation marks and citation omitted).

Only disputes relating to material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The Court should not accept evidence presented by the nonmoving party that is so "blatantly contradicted by the record . . . that no reasonable jury could believe it." Scott v. Harris, 550 U.S. 372, 380 (2007); see also Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007) ("Incontrovertible evidence relied on by the moving party . . . should be credited by the court on [a summary judgment] motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party.").

    B.    Qualified Immunity

"The doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate

7

clearly established statutory or constitutional rights of which a reasonable person would have known, or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." Bradway v. Gonzales, 26 F.3d 313, 317–18 (2d Cir. 1994) (citation and internal quotation marks omitted). "[B]ecause qualified immunity is not only a defense to liability, but also provides immunity from suit, an important part of its benefit is effectively lost if a case is erroneously permitted to go to trial; thus, the defendant's entitlement to qualified immunity should be resolved 'at the earliest possible stage in litigation.'" Lynch v. Ackley, 811 F.3d 569, 576 (2d Cir. 2016) (citing Pearson v. Callahan, 555 U.S. 223, 231-32 (2009)). "Unnecessary litigation of constitutional issues also wastes the parties' resources." Pearson, 555 U.S. at 237. As such, the "'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims' against government officials [will] be resolved" as early as possible. Pearson, 555 U.S. at 231 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

To deny qualified immunity, a court must determine either that no reasonable jury would find a violation of a constitutional right, or that the right was not clearly established at the time of the alleged violation. Tracy v. Freshwater, 623 F.3d 90 (2d Cir. 2010). For either inquiry, the determination is based on "objective reasonableness," which "depends only upon the officer's knowledge of the circumstances immediately prior to and at the moment that he made the split-second decision to employ . . . force." O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 37 (2d Cir. 2003); see also Thomas v. Roach, 165 F.3d 137, 143 (2d Cir.

8

1999) ("We also acknowledge that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation." (internal citations and quotation marks omitted)).

Qualified immunity provides a "shield[] . . . from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct . . . To be clearly established, the right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012) (internal citations, quotation marks, and alterations omitted). Qualified immunity attaches if "'officers of reasonable competence could disagree' on the legality of the defendant's actions." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)). In other words, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley, 475 U.S. at 341. Although it is not the case that an official action is "protected by qualified immunity unless the very action in question has previously been held unlawful . . . it is to say that in the light of pre-existing law the unlawfulness must be apparent." Creighton, 483 U.S. at 640.

III. DISCUSSION

Before the Court are two principal questions: (1) whether this Court has the authority to rule on the qualified immunity as to the excessive force claim given the

9

Second Circuit mandate, and (2) if so, whether defendants are entitled to qualified immunity. The answer to both questions is yes.

As to the first, there has yet been no ruling—either from this Court or the Second Circuit—on qualified immunity as to the excessive force claim. The legal precepts undergirding qualified immunity support a ruling now to the extent the undisputed facts allow it.

As to the second question, even if the Court assumes the force used on plaintiff was excessive, under the circumstances here presented qualified immunity is nonetheless appropriate. Qualified immunity attaches unless no reasonably competent officer would have concluded that the amount of force used was lawful. That is, if reasonably competent officers could differ, qualified immunity is appropriate. Malley v. Briggs, 475 U.S. at 341. Here, a quintessential example of a reasonable difference of view on this precise question is the differing views of four judges who have reviewed the case. But more than that, at the time of the incident, there was no clearly established right for one resisting arrest not to be pepper-sprayed at a distance of one foot. While such use of force may or may not be considered excessive by a jury, a court sitting in 2016 has little trouble on these facts finding that qualified immunity attaches.

A. Power to rule on qualified immunity at summary judgment

In Pearson v. Callahan, the Supreme Court held the two-part test for determining qualified immunity—1) whether a constitutional right was violated, and 2) whether that right was clearly established at the time of the defendant's alleged misconduct—need not occur in sequence; in other words, a Court may

10

determine that any constitutional violation was not clearly established without resolution on the question of whether a constitutional violation did indeed occur. 555 U.S. at 232, 238-40, modifying Saucier v. Katz, 533 U.S. 194, 201 (2001).

In this case, the Second Circuit held that the "assessment of a jury is needed" on the question of "whether Fourth Amendment reasonableness was exceeded" in defendants' arrest of plaintiff. Brown, 798 F.3d at 103. In so doing, it only held that a jury is necessary to determine whether a constitutional violation occurred, but not whether the right was "clearly established." See Pearson, 555 U.S. at 232, 238-40. The second question, unique to the issue of qualified immunity, was not on appeal on the excessive force claim.

Furthermore, the law of the case doctrine does not bar this Court from reaching the qualified immunity issue now. In the instant action, the Second Circuit did not make any ruling—explicit or implicit—on the issue of qualified immunity on the excessive force claim (that issue was never briefed on appeal, as this Court never made a ruling on it from which to appeal).

Plaintiff's reliance on Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004), is misplaced because unlike in Kerman, the Second Circuit in Brown never ruled on the qualified immunity on the claim at issue. In Kerman, the Second Circuit reversed the district court's grants of qualified immunity[5] because "the

---

[5] In Kerman, the Hon. Lawrence M. McKenna first granted partial summary judgment to defendants on qualified immunity grounds on all claims except for excessive force and battery; after a trial in which the jury found liability on excessive force but not on battery, the Hon. Robert P. Patterson Jr., to whom the case had been reassigned, granted judgment as a matter of law ("JMOL") that the officer was entitled to qualified immunity on the excessive force claim. 261 F.3d at 234. The Second Circuit reversed both Judge McKenna's summary judgment ruling on qualified

11

parties' version of the facts differ markedly" and "a jury should decide what transpired." Kerman v. City of New York, 261 F.3d 229, 240-41 (2d Cir. 2001). After a retrial, the district court again determined that the officer was entitled to qualified immunity. The Second Circuit reversed again, holding that "it was not open to the district court to decide on remand a right that was not clearly established." Kerman, 374 F.3d at 111. The Court noted that the initial decision "necessarily rejected the proposition that [plaintiff's] rights . . . were not clearly established . . . for the matter of whether an asserted right was established at the relevant time was a question of law." Id. 374 F.3d at 111-12. The doctrine of the law of the case does not, therefore, govern the specific legal question before this Court today. See id., 374 F.3d at 109-10.

Thus, this Court has the authority to adjudicate whether qualified immunity attaches.[6] It should reach that question before trial if it can do so. That is both efficient and legally correct. Because qualified immunity is "a limited entitlement not to stand trial or face the other burdens of litigation," Ashcroft v. Iqbal, 556 U.S. 663, 672 (2009) (internal citations and quotation marks omitted), it is an issue that

---

immunity (on one of the claims for false imprisonment) and Judge Patterson's JMOL on qualified immunity on the excessive force claim. Id., 261 F.3d at 239-241.

[6] Plaintiff argues that defendants waived the qualified immunity defense as to excessive force by devoting only half a sentence to the argument in their briefing on the first round of summary judgment. The quality of the argument in defendant's briefing does not here serve as a proper basis for a waiver. In this case, defendants pled the defense in the Answer, raised it specifically as to the excessive force claim in the first summary judgment motion, and raised it again on summary judgment now. Accordingly, the defense is not waived here. See Stephenson v. Doe, 332 F.3d 68, 76-77 (2d Cir. 2003) (holding that "failure to seek summary judgment on qualified immunity does not, on this record, amount to a waiver of the defense"); McCardle v. Haddad, 131 F.3d 43, 52 (2d Cir. 1997) (finding waiver where defendants failed to raise qualified immunity with respect to any specific claim until the trial was over); Blissett v. Coughlin, 66 F.3d 531, 538 (2d Cir. 1995) (finding waiver where, although defendants pled the defense in the Answer, failed to raise it again until after the jury verdict).

12

should be adjudicated as early as possible, Lynch v. Ackley, 811 F.3d 569, 576 (2d Cir. 2016). Indeed, "an important part of its benefit is effectively lost if a case is erroneously permitted to go to trial" because the court did not adjudicate qualified immunity at the appropriate time. Id. (citing Pearson, 555 U.S. at 231-32).

B.     Qualified Immunity on Excessive Force Claim

The Court now turns to the merits of the qualified immunity defense. The Second Circuit has identified two factual disputes: 1) was the officer too close when pepper-spraying plaintiff, and was that force excessive? And 2) was plaintiff using her free hand to pull down her skirt instead of intentionally resisting arrest? This Court can assume both those questions in plaintiff's favor and nonetheless resolve the question of qualified immunity for defendant. See Lynch, 811 F.3d at 576-77 ("[A]djudication of [a] motion for qualified immunity does not need to await jury resolution of factual disputes."). Even if a jury were to find that defendants' action constituted excessive force in this situation, defendants are nonetheless entitled to qualified immunity because not every reasonably competent officer would have concluded that the force used in effecting plaintiff's arrest was unlawful. See Malley, 475 U.S. at 341.

As discussed above, qualified immunity attaches unless it is the right plaintiff claims was "so clearly established" in this context such that "it is obvious that no reasonably competent officer would have concluded" the amount of force used during plaintiff's arrest violated the law. Malley, 475 U.S. at 341; see also Reichle, 132 S. Ct. at 2093. This is a high bar, as qualified immunity "gives ample room for mistaken judgments" and "provides ample protection to all but the plainly

13

incompetent or those who knowingly violate the law." Malley, 475 U.S. at 335, 341. In this case, the fact that two of four judges who reviewed this case disagreed as to whether the officers' actions constituted excessive force suggests that the right in this scenario was not clearly established. See Wilson v. Layne, 526 U.S. 603, 618 (1999) ("If judges . . . disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.").

Resolution of the question of qualified immunity requires the placement of facts as to which there is either no dispute or which a jury must find against applicable legal principles. See Lynch, 811 F.3d at 576-77 (noting that adjudication of the qualified immunity issue "does not need to await jury resolution of disputed factual issues" if on plaintiff's version of those disputed facts, there is no clearly established law prohibiting defendant's conduct at issue); Cowan ex rel. Estate of Cooper v. Breen, 352 F.3d 756, 764-65 (2d Cir. 2003) (noting that the jury's attention should be focused on any factual disputes "on the excessive force aspect of the inquiry," which "may help the court resolve the ultimate question of whether it would be clear to a reasonable officer in [defendant's] position that his conduct was unlawful in the situation he confronted"). In the context of excessive force, the fact questions relate to what was happening "on the scene at the moment the force is used." Rogoz v. City of Hartford, 796 F.3d 236, 246-47 (2d Cir. 2015). The Court then asks whether under similar circumstances every reasonably competent officer would have concluded that the amount of force used was excessive. See Malley, 475 U.S. at 341.

The Court's inquiry is a legal one. See Lynch, 811 F.3d at 576-77. Juries are not charged with making determinations of qualified immunity—but are instead charged with determining the facts which undergird such a determination. See Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007). To be sure, there are aspects of the Court's application of the qualified immunity standard to the determined facts which take on a feel of a factual determination. For instance, a judicial determination as to what a reasonably competent officer would conclude in a particular situation requires an objective factual determination as to the mindset of reasonably competent officers. See Lennon, 66 F.3d at 421 ("We recognize the apparent anomaly of holding that summary judgment is appropriate when a trier of fact would find that reasonable officers could disagree."). Courts which have upheld the judicial nature of the qualified immunity question have understood this tension—but viewed the policy reasons favoring a judicial determination of qualified immunity compelling. "The rule requiring the judge to resolve questions of reasonableness on summary judgment in qualified immunity cases where the material facts are not in dispute is consistent with the doctrine's purpose of providing immunity from suit, as well as a defense to liability." Lennon, 66 F.3d at 421 (citing Mitchell v. Forsyth, 472 U.S. 511, 527-28 (1985)).

In this case, virtually all of the facts as to what was occurring at the time of arrest are undisputed. Indeed, the entire episode is captured on video. Even if the Court assumes the two disputed facts in favor of plaintiff, a grant of qualified

15

immunity is nonetheless clear. The facts as to the arrest are, as set forth in more detail above, that:

1. Plaintiff was arrested for disorderly conduct.

2. Plaintiff refused orders to place her hands behind her back so that she could be handcuffed.

3. Thereafter, an officer who was larger than plaintiff kicked her legs out from under her and she fell to the ground.

4. One officer was able to handcuff one wrist.

5. Brown continued to struggle with the officers.

6. When Brown was on the ground, one hand was under her. To complete the handcuffing, an officer tried to take a hold of it.

7. Brown refused to offer her remaining hand for handcuffing.

8. Brown refused to do so because wanted to hold on to her handbag. She also later asserted after she was on the ground that she was trying to pull down her skirt.

9. She was told pepper spray would be applied and it was.

10. The pepper spray was applied from a point as close as a foot away from Brown.

These facts are all that is needed for a determination of qualified immunity. If this Court were to proceed to trial, the sole fact for a jury to determine would be number 10—whether the pepper spray was administered one foot or more than a foot away. For purposes of the resolution of this motion, the Court assumes that it

16

was the shortest distance Brown asserts, one foot. It is unnecessary to hold a trial to resolve this issue if, when the Court assumes it in favor of the plaintiff, the outcome is the same. The Court also accepts for purposes of this motion that Brown did not give the officers her other hand for cuffing because she wanted to hold onto her handbag or pull down her skirt.

Qualified immunity is an affirmative defense as to which defendants bear the burden of proof. To prevail, they must show that <u>a</u> reasonably competent officer would have concluded that taking the same actions they did was reasonable under the totality of the facts and circumstances. The opposite is similarly true: that for plaintiff to defend this motion, it must be "obvious that no reasonably competent officer would have concluded" that bringing plaintiff to the ground in the attempt to handcuff her or administering pepper spray in this scenario was an unlawful use of force. <u>See</u> <u>Malley</u>, 475 U.S. at 341.

In this case, it is far from obvious that no reasonably competent officer would have reached that conclusion. Indeed, 50 percent of judges who have reviewed this case have disagreed. The Second Circuit has held that actions that are comparable to a kick or pepper-spraying to effect the arrest of a noncompliant individual did not constitute excessive force. <u>See</u> <u>Lieberman v. City of Rochester</u>, 558 F. App'x 38, 39 (2d Cir. 2014) (affirming the district court in finding that body-slamming defendant to the ground before handcuffing was not objectively unreasonable); <u>Crowell v. Kirkpatrick</u>, 400 Fed. App'x 592, 595 (2d Cir. 2010) (holding that officers' tasing was objectively reasonable when plaintiffs who were being arrested for minor trespass

crimes and refusing to release themselves for arrest but were "not threatening the safety of any other person"). In scenarios where the use of pepper-spray may have risen to the level of constitutional violation, the arrestee, unlike plaintiff here, was fully "handcuffed and was offering no physical resistance of police commands." Tracy, 623 F.3d at 99. In scenarios where physical force to effect the arrest of passive resisters were ruled to be potential constitutional violations, the use of force was far stronger than a kick and "significantly less clearly directed at the goal of effecting the arrest of the [plaintiff]." Crowell v. Kirkpatrick, 400 F. App'x 592, 595-96 (2d Cir. 2010) (citing Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 123 (2d Cir. 2004), where "the police officers' excessive uses of force included lifting and pulling plaintiffs Waugh and Verdi by pressing their wrists back against their forearms in a way that caused lasting damage; throwing Waugh face-down to the ground; dragging Dombroski face-down by his legs, causing a second-degree burn on his chest; placing a knee on Ong's neck in order to tighten his handcuffs while he was lying face-down; and ramming Ong's head into a wall at a high speed."). Here, it is certainly not the case that "existing precedent placed the conclusion that [defendant] acted unreasonably in these circumstances 'beyond debate.'" Mullenix v. Luna, 136 S. Ct. 305, 209 (2015) (quoting Ashcroft v. Al-Kidd, 563 U.S. 731, 741 (2011)).

Plaintiff points to the NYPD Patrol Guide, which states that pepper spray should only be used at a minimum of three feet from the arrestee. According to plaintiff, she was sprayed twice at a distance of only one foot. However, the

violation of the NYPD Patrol Guide—while potentially relevant to the determination of whether excessive force was used[7]—does not preclude qualified immunity. This Court is not aware of any legal holding that the use of pepper spray from one foot away from an arrestee who has not complied with orders necessarily contravenes the constitutional rights of the arrestee. In fact, New York courts have held that the patrol guide does not "prescribe the specific action to be taken in each situation encountered by individual officers, but rather is intended to serve as a guide for members of the Police Department." Galapo v. City of New York, 95 N.Y.2d 568 (App. Div. 2000); see also Williams v. City of New York, 811 N.E.2d 1103, 1108 (N.Y. 2004). Accordingly, the unlawfulness of the officers' actions in spraying plaintiff is not "apparent," Creighton, 483 U.S. at 640, and the violation of any right was not "clearly established." Pearson, 555 U.S. at 238-40.

In addition, the fact that even federal judges—who have reviewed this specific excessive force claim after the fact with 20-20 hindsight—disagree as to whether a constitutional violation occurred supports the finding of qualified immunity for defendant officers, who had only seconds to make a judgment. "If judges . . . disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." Wilson, 526 U.S. at 618; see also Mangino v. Inc. Vill. of Patchogue, 808 F.3d 951, 959 (2d Cir. 2015) (holding that defendant is entitled to qualified immunity because "it was not only officers of reasonable competence, but federal judges, who could so disagree");

---

[7] The Court is not here deciding that it would allow the NYPD Patrol Guide into evidence at trial—that would depend on, inter alia, motions in limine and consideration under Fed. R. Evid. 403.

McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir. 1999) ("The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct. The unlawfulness must be apparent."). Because any unlawful action by defendants would not have been apparent to every officer of reasonable competence, qualified immunity attaches to defendants.

    C.    State Law Claims

Since this Court grants defendants qualified immunity, there are no more federal claims for trial. Accordingly, the state law claims remain dismissed. See Lennon, 66 F.3d at 426 (citing United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).

IV.    CONCLUSION

For the reasons set forth above, defendants' motion is GRANTED. The Clerk of Court is directed to terminate the motion at ECF No. 81 and to terminate this action.

    SO ORDERED.

Dated:    New York, New York
           April 20, 2016

                              KATHERINE B. FORREST
                              United States District Judge